IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DALLAS WELDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 3:15-cv-449-WHA-GMB |
| ) | |
| SEC RESTAURANT GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5.  Pending before the court is Plaintiff Dallas Weldon's Motion for Entry of Default Judgment. Doc. 29.  For the reasons stated herein, the Magistrate Judge RECOMMENDS that the Motion for Entry of Default Judgment (Doc. 29) be GRANTED in part and DENIED in part.

**I. BACKGROUND**

On June 25, 2015, Plaintiff Dallas Weldon brought this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA"), alleging that Defendant SEC Restaurant Group, Inc. ("SEC") operates a Pizza Hut restaurant on the property located at 4581 U.S. 280, Alexander City, Alabama that is not in compliance with the ADA's provisions. Doc. 1.  Weldon initially brought suit against the incorrect parties, naming Brock Properties, Inc. ("Brock Properties") and NPC International, Inc. ("NPC International") as the defendants in the original complaint. Doc. 1.  On July 13, 2015,

Weldon amended the complaint to substitute Richmark, Inc. ("Richmark") for NPC International, alleging that Richmark and Brock Properties "maintain[ed] control over the subject location and . . . participated in the design, construction, and/or decisions regarding any subsequent necessary and/or modifications of same." Doc. 9 at 3. Finally, on December 14, 2015, Weldon amended the complaint for a second time, substituting SEC, a Missouri corporation, for Brock Properties and Richmark. Doc. 21. In the second amended complaint, Weldon averred that SEC is the actual owner and operator of the Pizza Hut and maintains full control over the property. Doc. 21 at 2–3.

On December 17, 2015, a summons was issued to SEC through its local registered agent, Registered Agents, Inc. ("Registered Agents"), located in Dothan, Alabama. Doc. 22. The record reflects that service was executed on December 21, 2015, and the return receipt was filed with the court the next day. Doc. 23. On February 22, 2016, after SEC failed to submit a responsive pleading or otherwise appear, the court ordered SEC to show cause as to why a default judgment should not be entered against it. Doc. 24. On February 24, 2016, Weldon filed an application with the Clerk of Court for an Entry of Default, and on April 27, 2016, the Clerk of Court entered a default against SEC. Docs. 25 & 28.

Weldon is a resident of Alabama who is paralyzed from the waist down as the result of a spinal injury. Doc. 21 at 2. He alleges that he has encountered "architectural barriers" that prevent him from enjoying "equal access to the benefits, accommodations and services offered at the Pizza Hut." Doc. 21 at 4. Specifically, Weldon alleges three categories of barriers at the property in question: (1) the parking lot, (2) the curb ramp, and (3) the men's restroom. Doc. 32 at 3. Weldon claims that the designated handicapped parking spaces are

not located along the shortest accessible route to the building's entrance and do not have upright handicapped parking signs. Doc. 32 at 3. He also alleges that the curb ramp servicing the entrance is deficiently designed, causing him difficulty in using the ramp without assistance. Doc. 32 at 3–4. Finally, he argues that the men's restroom is deficient in several ways:

> Defendant's restroom entrance door requires more than 5 pounds of force to open; (2) Defendant's toilet in the men's restroom is too far from the adjacent side wall; (3) Defendant's urinal is too high for equal access to persons bound to wheelchairs; (4) the flush lever is mounted on the closed side of Defendant's toilet; (5) Defendant has failed to provide accessible rear wall grab bar; and (6) Defendant's restroom lavatory faucet controls requires tight grasping, pinching, and/or twisting of the wrist.

Doc. 32 at 4. Weldon states that as a result of the alleged barriers he primarily orders carry-out meals, but he has definite plans to return to the Pizza Hut in the future. Doc. 32 at 4.

Weldon asks the court to grant injunctive relief to bring the Pizza Hut into compliance with the ADA Accessibility Guidelines ("ADAAG"), claiming that he will be unable to enjoy full and equal enjoyment of the restaurant's services, facilities, and accommodations if injunctive relief is not granted. Doc. 32 at 4–5. He also claims that in addition to the harm suffered, he has no adequate remedy at law. Doc. 32 at 5. Finally, Weldon asks for attorney's fees. Doc. 32 at 7; Doc. 34.

## II. STANDARD OF REVIEW

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, a district court may enter a default judgment against a defendant who was properly served[1] and who has failed

---

[1] The court finds, based on the evidence now before it, that SEC was properly served with process on December 21, 2015. Doc. 22. Registered Agents is listed by the Alabama Secretary of State as SEC's local

3

to defend or appear. Fed. R. Civ. P. 55(b)(2); *see Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). When a default judgment is entered, the court accepts the complaint's factual allegations as true. *See, e.g.*, *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015). However, "[w]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (internal quotation marks omitted). Thus, the court may only enter a default judgment if the complaint's factual allegations "provide a sufficient legal basis for entry of a default judgment." *Cohan*, 309 F.R.D. at 666.

In the Eleventh Circuit, this standard is akin to the standard applied to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Surtain*, 789 F.3d at 1245. Therefore, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 662). The Eleventh Circuit has cautioned, however, that "there is a strong policy of determining cases on their merits," and default judgments are therefore viewed with "disfavor." *In re*

---

authorized agent for service of process. Doc. 32-8. Weldon properly served SEC with process by mailing a summons and a copy of the second amended complaint via certified mail to Registered Agents at its listed address in Dothan, Alabama. Doc. 22. Confirmation of receipt of service was filed with the court on December 22, 2015. Doc. 23.

*Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

Once the court is satisfied that a default judgment is warranted, the court "turns to the terms of the judgment." *Cohan*, 309 F.R.D. at 667. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Under Rule 55, the court may conduct hearings or make referrals to determine the amount of damages and establish the truth of any factual allegation. Fed. R. Civ. P. 55(b)(2). "Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief." *Cohan*, 309 F.R.D. at 667.

## III. DISCUSSION

### A. Weldon's ADA Claim

#### 1. *Standing*

A federal court has a duty to "assure itself at the outset of litigation that a litigant who seeks an injunction has Article III standing." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1316 (M.D. Fla. 2010). "To satisfy the requirements of standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that a favorable court ruling could redress the injury." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 415 (11th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Injunctive relief requires an additional showing of the plaintiff's actual or imminent injury. *Norkunas*, 444 F. App'x at 415. "Past exposure to illegal conduct, without a continuing threat of future harm, is insufficient to establish standing for injunctive relief."

*Hoewischer v. MGML, LLC*, 2013 WL 8655891, at *3 (M.D. Fla. April 12, 2013). Thus, to obtain injunctive relief, Weldon must allege "facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). To assess the likelihood of future harm, district courts generally focus on four factors: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant." *Norkunas*, 720 F. Supp. 2d at 1316. To be awarded injunctive relief under the ADA, a plaintiff must either "have attempted to return to the non-compliant building or at least intend to do so in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (internal quotation marks omitted).

The court concludes that Weldon has standing to bring his claim under the ADA. Weldon has demonstrated a concrete injury in fact by alleging that he has been precluded from equal access to the Pizza Hut as a result of the restaurant's allegedly deficient facilities. *See, e.g.*, *Hoewischer v. Cedar Bend Club, Inc.*, 877 F. Supp. 2d 1212, 1222 (M.D. Fla. 2012) (stating that a plaintiff established an injury in fact where he alleged facts that allowed the court to "infer that, if true, Plaintiff could not fully enjoy Defendant's facilities because of his encounters with the barriers"). SEC's conduct, as the owner and operator of the Pizza Hut, is the purported cause of Weldon's alleged injury. Finally, a favorable ruling, namely that injunctive relief is granted, would redress the injury by according Weldon full and equal access to the restaurant. Therefore, Weldon has Article III standing to bring this suit.

Additionally, Weldon has satisfied his burden to demonstrate a likelihood of future harm if injunctive relief is not granted. He alleged that he has visited the Pizza Hut on multiple occasions, before filing the complaint and afterward, and lives 12 miles away. Doc. 32 at 2. Additionally, he "continues to desire and intends to visit" the restaurant "with the same frequency as he has previously." Doc. 21 at 5. In addition to living in close proximity to the Pizza Hut, Weldon "frequently travels" to the area in which the restaurant is located. Doc. 21 at 5. Because there is nothing before the court to suggest any of the alleged barriers have been remedied, Weldon will surely suffer the same alleged injury when he returns. *See, e.g.*, *Houston*, 733 F.3d at 1337 (finding a high likelihood of future injury where a plaintiff lived thirty miles from the store in question and planned to return in the future). Therefore, the court concludes that Weldon has standing to seek injunctive relief pursuant to 42 U.S.C. § 12188(a)(2).

### 2. *Title III*

Title III of the ADA provides generally that "no individual shall be discriminated against on the basis of disability" in "any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It was created "to prevent owners of public places of accommodation from creating barriers that would restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges." *Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014). To state a valid Title III claim, a plaintiff must prove that "(1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the

meaning of the ADA." *Norkunas*, 444 F. App'x at 416. Discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Weldon has the initial burden to show "(1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is readily achievable." *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006). "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Weldon has submitted sufficient proof that he is disabled and that SEC owns and operates the Pizza Hut restaurant in question, which is a "place of public accommodation" within the meaning of § 12181(7)(B). Further, after a thorough review of the record, the court is satisfied that there is sufficient evidence of discrimination under § 12182(b)(2)(A)(iv). Weldon has alleged a number of architectural barriers at the Pizza Hut—including inadequate handicapped parking, a faulty curb ramp, and various defects in the men's restroom—which have not been remedied. Doc. 21 at 6–8. Specifically, Weldon claims that the designated handicapped parking spaces are not marked by a sign with the International Symbol of Accessibility and are not located on the shortest accessible route to the entrance. Doc. 32 at 13. Additionally, the parking lot's curb ramp allegedly exceeds the ADAAG's maximum slope and rise requirements and has "excessive changes in level." Doc. 32 at 13–14. Finally, Weldon alleges a number of barriers in the men's restroom: (1) the door requires too much force to open; (2) faulty positioning of the toilet; (3) the height of the urinal exceeds the maximum allowed distance from the floor; (4) faulty positioning of the toilet handle; (5) no rear wall grab bar behind the toilet; and (6) faucet

controls that require tight grasping, pinching, or twisting of the wrist. Doc. 32 at 14. Weldon claims that these barriers all violate the ADAAG. Doc. 32 at 13–14. Accepting Weldon's allegations as true, the court is satisfied, based on its review of the ADAAG and the record before it, that the alleged barriers violate the provisions of the ADAAG, which satisfies Weldon's burden to demonstrate the existence of a barrier. *See, e.g.*, *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1009–10 (C.D. Cal. 2014) (concluding that a plaintiff demonstrated the existence of a barrier by alleging violations of the standards set out in the ADAAG).

Further, Weldon has stated that alterations of these alleged barriers are "readily achievable, technically feasible, [and] structurally practicable" and will not cause an undue burden for SEC nor "alter the fundamental nature" of the restaurant. Doc. 21 at 8. Therefore, Weldon has met his burden to establish that removal of the barriers is readily achievable. *See, e.g.*, *Vogel*, 992 F. Supp. 2d at 1011 (finding that the plaintiff's "allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden of production" before granting the plaintiff's motion for default judgment); *Lugo v. 141 NW 20th Street Holdings, LLC*, 878 F. Supp. 2d 1291, 1294–95 (S.D. Fla. 2012) (stating that, at the pleading stage, the plaintiff is not required to "provide additional specificity regarding the nature and cost of the action needed to remedy the violations"). Additionally, many of the remedial measures for removing these barriers can be found in 28 C.F.R. § 36.304(b), which enumerates examples of steps to remove barriers that are readily achievable. *See* 28 C.F.R. § 36.304(b) (listing installing ramps, making curb cuts, installing grab bars, rearranging toilet partitions, and creating designated accessible parking spaces

as examples of steps that are readily achievable). Accordingly, the court concludes that Weldon has stated a viable claim under Title III of the ADA, 42 U.S.C. § 12188(b)(2)(A)(iv).

**B.     Remedies**

*1.     Injunctive Relief*

The ADA explicitly provides that in the event of a violation of § 12182(b)(2)(A)(iv), "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." 28 U.S.C. § 12188(a)(2). In order to seek injunctive relief, Weldon must show that: (1) he has a substantial likelihood of success on the merits of his case, (2) he will suffer irreparable injury unless the injunction is granted, (3) his injury outweighs any damage the injunction may cause to SEC, and (4) the injunction would not be adverse to the public interest. *C.B. v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 261 F. App'x 192, 193 (11th Cir. 2008). "The asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Id.* at 194 (internal quotation marks omitted).

Because the court has concluded that Weldon has stated a viable discrimination claim under Title III of the ADA and is satisfied with Weldon's evidentiary support, the court finds that he has demonstrated a substantial likelihood of success on the merits of his case. Weldon has also met his burden in demonstrating that he will suffer irreparable injury unless the injunction is granted and the barriers at the Pizza Hut are remedied. Weldon's permanent and irreparable injury—the denial of the full and equal enjoyment of the services, facilities, and accommodations at the restaurant on the basis of his physical

disability—outweighs any minor inconvenience imposed upon SEC in retrofitting its restaurant in accordance with the ADA Accessibility Guidelines.  Finally, the injunction would not be adverse to the public interest; on the contrary, it would benefit those customers who, like Weldon, may be disabled and consequently denied full and equal access to the Pizza Hut.  Thus, Weldon has satisfied his burden to show that injunctive relief is necessary to remedy SEC's alleged violations of § 12182(b)(2)(A)(iv).

   2.     *Attorney's Fees*

In addition to injunctive relief, Weldon has requested attorney's fees and costs in the amount of $10,075, which he calculates by multiplying his attorney's requested hourly rate ($325) by the hours purportedly spent on the litigation (31). "Section 12205 of the ADA authorizes a court, in its discretion, to 'allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .'" *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (quoting 42 U.S.C. § 12205).[2]  The court finds that Weldon is a prevailing party within the meaning of the ADA because the injunctive relief afforded to Weldon amounts to a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); *see Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.").

---

[2] While certain litigation expenses or costs may be recoverable, Weldon's counsel has not requested reimbursement for any out-of-pocket expenses, and Weldon was not required to pay a filing fee by virtue of his *in forma pauperis* status. *See* Docs. 3 & 5.

When calculating reasonable attorney's fees, courts within the Eleventh Circuit use the lodestar method, which requires a calculation of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—the customary fee charged by attorneys of comparable skills, experience, and reputation in the same community for similar legal services. *Neptune Designs*, 469 F.3d at 1359; *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The court may then adjust this lodestar upward or downward based on a variety of factors, including the novelty and difficulty of the issues presented, the experience and skill of the attorneys, and the results obtained. *Neptune Designs*, 469 F.3d at 1359; *see Johnson v. Ga. Hy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (listing twelve factors).

The party requesting attorney's fees bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. This includes "specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* Satisfactory evidence "at a minimum is more than the affidavit of the attorney performing the work" and "necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* at 1299. This can be demonstrated through direct evidence of the rates of lawyers in similar cases or by opinion evidence. *Id.* Additionally, courts consider citations to prior cases involving the same fee applicant, comparable attorneys, or comparable litigation. *See, e.g.*, *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1350 (S.D. Fla. 2006). Where "there is a lack of documentation or support the court may make the award on its own experience," and may do so "without the need of further pleadings or an evidentiary hearing." *Norman*, 836 F.2d at 1303.

Weldon's counsel, John Allen Fulmer, has failed to meet his burden of proving the reasonableness of his requested hourly rate of $325.  Mr. Fulmer has not produced any direct evidence of rates for comparable attorneys in similar cases or any opinion evidence on the reasonableness of his requested rate.  He has not directed the court to any previous cases in which he was awarded a fee corresponding with this hourly rate.  Indeed, the sole source of support for Mr. Fulmer's requested rate is a barebones biographical sketch—that he has twelve years of experience, has been admitted to practice in certain federal courts, and has litigated "over 100 public accommodation cases under Title III of the ADA"—and the statement that "[r]ates ranging from $275 to $500 per hour have been found by Courts of this jurisdiction to be reasonable in similar types of litigation," with citation to four cases. Doc. 34 at 6.

These four cases, all from the early 1990s and only one within this district, are not instructive.  *In re Domestic Air Transportation Antitrust Litigation* was, as its name suggests, a complex antitrust class action in which a $50 million cash settlement was reached. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993).  In that litigation, the court awarded hourly rates for partners in a range from $125 to $500, and did so because of "the complexity of the action and the expertise required to litigate a class action involving potentially the largest consumer class in history." *Id.* at 355.  *Dillard v. City of Elba* was a voting rights challenge to a system used to elect city councilmembers brought under § 2 of the Voting Rights Act. *See Dillard v. City of Elba*, 863 F. Supp. 1550 (M.D. Ala. 1993).  Here, the court justified the high hourly rate ($295) by noting that the two attorneys at issue "have now rightfully earned the reputation as two of the most

13

experienced, knowledgeable, and able voting rights lawyers in the State of Alabama, if not the nation." *Id*. at 1553.  In *Knight v. State of Alabama*, which was a civil rights case, the court awarded hourly rates of $140, $175, $200, and $275, with the highest rate factoring in the "unique, complex, and unchartered area of civil rights law" and the fact that this attorney's "presentation was much more thorough and deeper than anything that had been attempted before." *Knight v. State of Ala.*, 824 F. Supp. 1022, 1032 (N.D. Ala. 1993) (internal quotation marks omitted).  Finally, *Cuban Museum of Arts and Culture, Inc. v. City of Miami* was a First Amendment case in which the court awarded hourly rates of $175 and $275 based on the attorney's own representations and an affidavit from a third party establishing that "that the rates claimed are in accordance with the prevailing market rates charged in similar cases by attorneys with comparable skills, reputations, and experience." *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F. Supp. 1190, 1192 (S.D. Fla. 1991).  Despite the significant factual distinctions between these cases and the case at bar, counsel has offered no explanation for how they might be instructive.  Because Mr. Fulmer has not provided the court with satisfactory support for his fee application, the court is largely left to its own devices in ascertaining a reasonable rate for his services.

The reasonable hourly rate for an attorney's services is determined by market rates in the locality in which the case was filed. *Adams v. City of Montgomery*, 2013 WL 6065763, at *2 (M.D. Ala. Nov. 18, 2013).  Courts in this district have previously found that "the applicable range for attorneys with 10 years of experience [is] $200.00 to $250.00," while attorneys with over 20 years of experience can command hourly rates of $300 to $375. *See Adams*, 2013 WL 6065763 at *3; *Alfa Corp. v. Alfa Mortgage, Inc.*, 560

14

F. Supp. 2d 1166, 1180 (M.D. Ala. 2008) (using the same fee structure); *Gaylor v. Comala Credit Union*, 2012 WL 1987183, *3 (M.D. Ala. June 1, 2012) (same); *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1163 (M.D. Ala. Feb. 13, 2007) (same).  Using these ranges as a guidepost and relying on the court's own experience and knowledge of the litigation market in this district, the court concludes that the reasonable hourly rate for Mr. Fulmer in this matter is $225.  This rate is based primarily on his experience of approximately 12 years, the relatively routine nature of the legal and factual issues in this case, and fee awards in other cases within this district for attorneys with similar experience.  There has been no showing from Mr. Fulmer that the particular circumstances of this case or his skill and expertise mandate a rate outside of, or even at the highest end of, the customary rates awarded within this district—and certainly not within the rate bracket for attorneys with more than 20 years of experience.

The next step is to ascertain the reasonable amount of hours expended by counsel on the litigation. *Norman*, 836 F.2d at 1301.  Hours that are "excessive, redundant or otherwise unnecessary" should be excluded. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  Thus, fee applicants must exercise "billing judgment" and must exclude those hours "that would be unreasonable to bill to a client and therefore to one's adversary." *Norman*, 836 F.2d at 1301.  The court has the discretion to exclude work performed on unrelated tasks—time that is not reasonably expended on the litigation. *Maner v. Linkan LLC*, 602 F. App'x 489, 491 (11th Cir. 2015).

Mr. Fulmer states that he has devoted 31 hours on the litigation and submitted an invoice in support. Docs. 34 & 34-1.  The court is satisfied with this calculation with one

exception.  The court finds that the drafting and filing of the Supplemental Brief with Verified Statement of Attorney's Fees (Doc. 34) should not be included in the computation of the fee award because it was designed solely for Mr. Fulmer's benefit, not "reasonably done actually to secure for clients the benefits to which they are entitled." *Norman*, 836 F.2d at 1305.  Counsel's work on the fee request is analogous to a private attorney's preparation of billing statements for his or her clients.  Few attorneys would be so bold as to charge their clients for the time spent drawing up their own bills.  At any rate the court finds that this time must be excluded because it would be unreasonable to bill to a client. *See id*. at 1301.  Thus, 5.1 hours will be subtracted from Mr. Fulmer's calculation, leaving 25.9 hours.  The court therefore allows 25.9 hours at a rate of $225 per hour, resulting in a lodestar of $5,827.50.

Mr. Fulmer has not requested that this lodestar be augmented by the application of a multiplier, only that his fees not be reduced below the lodestar amount. *See* Doc. 34 at 4. Balancing the result obtained for Weldon and the public interest vindicated in this case against the relatively formulaic nature of the legal and factual issues and the paucity of evidence regarding Mr. Fulmer's experience, skill and reputation within the legal community, the court agrees that no multiplier is warranted and that the aggregate attorney's fee award should be $5,827.50.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Weldon's Motion for Entry of Default Judgment (Doc. 29) be GRANTED in part and DENIED in part.  Accordingly, the Magistrate Judge RECOMMENDS that the

court impose the following injunctive relief to bring the property operated by SEC Restaurant Group, Inc. at 4581 U.S. 280, Alexander City, Alabama in compliance with the provisions of the Americans with Disabilities Act ("ADA") and the ADA Accessibility Guidelines, all such relief to be accomplished within 90 days of the court's Final Judgment:

1. Provide accessible parking spaces marked with an upright sign containing the International Symbol of Accessibility;

2. Designate accessible parking spaces on the shortest route of travel to an accessible entrance;

3. Correct the curb ramp's slope, rise, side slope, and changes in level;

4. Reduce the amount of force required to open the entrance to the men's restroom;

5. Correct the distance from the toilet in the men's restroom to the adjacent side wall;

6. Reduce the height of the urinal in the men's restroom;

7. Correct the location of the flush control on the toilet in the men's restroom;

8. Install a rear wall grab bar servicing the toilet in the men's restroom; and

9. Correct the faucet controls in the men's restroom.

Additionally, the court RECOMMENDS that Weldon be awarded attorney's fees in the amount of $5,827.50.

It is further ORDERED that the parties shall file any objections to this recommendation **on or before October 20, 2016**. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which an objection is being asserted. Frivolous, conclusive, or general objections will not be considered by the

district court.  The parties are advised that this report and recommendation is not a final order of the court, and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues addressed in the report and recommendation, and shall bar the party from attacking on appeal factual findings in the report and recommendation that are accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 6th day of October, 2016.

                                                   /s/ Gray M. Borden
                                  UNITED STATES MAGISTRATE JUDGE